IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |
|---|---|
| IN RE ) | |
| ) | |
| JOHN M. DIAZ and ) | CASE NO. 05-95123-H3-13 |
| DELIA T. DIAZ, ) | |
| ) | |
| Debtors, ) | |
| ) | |

<u>MEMORANDUM OPINION</u>

The court has held a hearing on the "1st Chapter 13 Fee Application" (Docket No. 47) filed by Reese W. Baker. The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered denying the application. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

<u>Findings of Fact</u>

John M. Diaz and Delia T. Diaz ("Debtors") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on March 1, 2005. Reese W. Baker signed the petition as attorney for Debtors. William E. Heitkamp ("Trustee") is the Chapter 13 Trustee.

In the instant application, Baker seeks allowance of $4,132.00 in fees, and $301.50 in expenses, for representation of Debtors in the instant Chapter 13 case. At the commencement of

the hearing on the instant application, Baker announced that he has agreed to reduce the amount he is seeking by $500.

On the petition date, John Diaz was unemployed.

On March 22, 2005, Baker filed schedules, a statement of financial affairs, and a plan on behalf of Debtors. The initial schedules (Docket No. 5) were accompanied by Debtors' declaration under penalty of perjury that their schedules were true and correct, to the best of their knowledge, information, and belief.

Debtors' initial schedule I listed Delia Diaz' gross monthly income as $7,098.87, and net monthly income as $5,602.16. John Diaz testified that, although he was not employed on the petition date, he had obtained a job offer by the time the schedules were prepared, and began working on April 1, 2005. Nonetheless, although Baker's office listed John Diaz' employment on the initial schedule I, Debtors listed no income from John Diaz' employment. Debtors' initial schedule I noted that Debtors have two children, whose ages were 17 and 20 on the petition date. (Docket No. 5).

Debtors' initial schedule J listed Debtors' monthly expenses to be $4,349.00. These expenses included $220 for electricity, $65 for water and sewer, $200 for telephone, $85 for cable TV, $75 for home maintenance, $475 for food, $100 for clothing, $50 for laundry and cleaning, $75 for medical, $400 for

transportation, and $100 for recreation.  (Docket No. 5).

Debtors' initial plan provided for payment of $1,250.00 per month to the Chapter 13 Trustee for 60 months.  Debtors' initial plan proposed that Debtors would pay their monthly mortgage directly to the lender.  The funds to be paid to the Chapter 13 Trustee were to be disbursed on the mortgage lender's arrearage claim, a claim secured by appliances, three claims secured by automobiles, and a priority tax claim, leaving $1,710.07 to provide approximately seven percent on scheduled unsecured claims.  (Docket No. 6).

Both Debtors testified that, prior to the filing of the case, they visited Baker's office for a 30 to 40 minute initial consultation.  They testified that, at the consultation, they met with James Ferguson, an attorney with Baker's office.

Debtors testified that the initial consultation did not address Debtors' budget.  Delia Diaz testified that Baker's office never counseled with her on what Debtors' expenses were or what they could afford.

Delia Diaz testified that she was not advised by anyone in Baker's office of the significance of the schedules, or the requirement that they be signed under penalty of perjury.  She testified that no one in Baker's office instructed her to review the schedules and assure that all the information contained therein was true and correct.

Baker testified that Debtors reviewed the initial schedules with James Pope, who was then a law student working at Baker's firm,[1] and that after Pope reviewed the schedules with Debtors, Ferguson reviewed the schedules before they were filed.

On April 21, 2005, Trustee gave notice of the meeting of creditors pursuant to 11 U.S.C. § 341, to be held in Galveston, Texas on May 16, 2005.

Delia Diaz testified that, on May 16, 2005, she was present at the location set for the meeting of creditors.  No one from Baker's office was present.  The docket reflects that Debtors did not appear for the meeting of creditors on May 16, 2005.

Trustee gave notice of a reset meeting of creditors, to take place on July 25, 2005, in Galveston.

On July 13, 2005, Debtors moved to transfer venue of the instant case from the Galveston Division to the Houston Division.  In the motion, Baker asserted that the Houston Division is more convenient than the Galveston Division for Debtors and Debtors' counsel.  (Docket No. 10).

The petition in the instant case identifies Debtors' county of residence as Brazoria County, Texas.  Brazoria County, Texas is in the Galveston Division of the Southern District of Texas.

---

[1] Baker testified that Pope has since become licensed as an attorney.

On August 12, 2005, Trustee gave notice of a reset date for the meeting of creditors, to be held in Galveston on September 12, 2005.

Debtors appeared at the meeting of creditors on September 12, 2005, together with Ferguson.  Baker testified that, at the meeting of creditors, Trustee requested amendments to the schedules and plan.  He testified that the usual practice in his office is to give notes from the meeting of creditors to the paralegal in his office handling the case, so that the paralegal can take the necessary action.  He testified that, if Trustee were to request amendments at the meeting of creditors in this case, Ferguson would have given notes to the paralegal to prepare amendments.

On October 27, 2005, the court granted Debtors' motion to transfer the case to the Houston Division.[2]

On November 21, 2005, more than two months after the date of the meeting of creditors, Trustee moved to dismiss the case, on grounds Debtors had failed to amend their schedules to disclose Mr. Diaz' income.  (Docket No. 17).  The motion was set for hearing on January 12, 2006.

Although Debtors were aware of John Diaz' income shortly after the filing of the case, and promptly notified

---

[2]The instant case previously was assigned Case No. 05-80572-G3-13.  Case No. 05-95123-H3-13 was assigned to the case upon transfer to Houston.

Baker's office of John Diaz' income, Baker's office waited until December 14, 2005, more than nine months after the filing of the petition, three months after the meeting of creditors, and three weeks after the Trustee filed a motion to dismiss, to file Debtors' first amendment to their schedules I and J, and an amended plan.  (Docket Nos. 22, 23).

In Debtors' first amended schedule I, Mrs. Diaz' gross income was shown as reduced from $7,098.87 to $4,097.30.  Mr. Diaz' gross income was shown as $3,798.71.  Debtors' net income was shown as $6,080.84, which is $478.68 more than that shown in the initial schedules.  Debtors' first amended schedule J included expenses that were increased a total of $375 from the initial schedules:  $240 for electricity, $85 for home maintenance, $490 for food, $60 for laundry and cleaning, $85 for medical, and $450 for transportation.  Debtors' first amended schedule J also included new expense items of $60 for haircuts, and $200 for school expenses.  (Docket No. 23).  Debtors' first amended plan proposed to increase Debtors' plan payments by $100 per month, to $1,350.  Although the first amended schedules disclosed increased income of $478.68 per month, Debtors proposed to reduce the distribution to unsecured creditors, from seven percent to six percent.  (Docket No. 22).

On January 11, 2006, the day before the hearing scheduled on Trustee's motion to dismiss, Debtors filed their

second amendment to the schedules and plan.

In Debtors' second amended schedule I, Mrs. Diaz' gross income was listed as $7,304.87.  Mr. Diaz' gross income was listed as $4,097.30 (the same amount listed for Mrs. Diaz' gross income in the first amended schedules).  Debtors' net income was shown as $8,622.35, which is $2,541.51 more than that listed in the first amended schedules, and $3,020.19 more than that listed in the initial schedules.  Debtors' second amended schedule J included expenses increased $2,440 from the second amended schedules, and $2,815 from the initial schedules: $450 for electricity, $150 for water and sewer, $250 for telephone, $150 for cable TV, $100 for home maintenance, $600 for food, $150 for clothing, $100 for laundry and cleaning, $300 for medical, $750 for transportation, $250 for recreation, and $500 for school expenses.  Debtors' second amended schedule J also added $800 for charitable contributions, and $160 for homeowners insurance, while reducing the amount for auto insurance from $500 to $350. (Docket No. 26).  Debtors' second amended plan proposed to increase Debtors' plan payments by $100 per month, to $1,450. Although the second amended schedules disclosed increased income of $2,440 per month from the first amended schedules, Debtors proposed to increase the distribution, over five years, to unsecured creditors by only $5,005.83, representing a distribution of 26% to unsecured creditors.

7

Baker testified that he does not know whether anyone from his office discussed the amended schedules with Debtors. Delia Diaz testified that the second amended schedules were faxed to her the day before the dismissal hearing, at 4:50 p.m., ten minutes before the close of the business day. She testified that she was instructed that she must return the second amended schedules initialed within five minutes. She testified that she initialed the second amended schedules without reading them. She testified that, after the initial consultation, all of Debtors' communications with Baker's office were by telephone or fax, and all were with paralegals or secretaries in Baker's office.

Delia Diaz testified that she was unaware of the changes Baker's office had made to her schedule J. She testified that she has not regularly made charitable contributions of $800 per month. She testified that the amounts listed in the second amended schedule J for electricity and food did not reflect Debtors' actual expenses. She testified that no one explained to her the importance of including accurate information on Debtors' schedule J.

On January 20, 2006, nine days after Debtors filed their second amended schedules, Trustee filed a second motion to dismiss. In the second motion, Trustee stated, <u>inter</u> <u>alia</u>: "The Trustee believes that the debtors did not review and approve these schedules prior to them being filed with the court. The

Trustee alleges that the line item for charitable contributions is a total fabrication, inserted on Schedule J to pad the budget and justify a lower monthly plan payment."  In the motion, Trustee also stated an intention to file a motion for sanctions pursuant to Bankruptcy Rule 9011.  (Docket No. 28).  Delia Diaz testified that she was unaware that Trustee had made these assertions.

After the second amended schedules and plan, Debtors filed three additional amendments.  The third amended schedule J, filed February 2, 2006, shows reduced expenses, from $7,164 to $6,744.  This reduction of $420 reflects a $120 reduction of Debtors' recreation expenses, and $300 of Debtors' charitable contributions.  (Docket No. 33).  Debtors' third amended plan proposed an increase of plan payments from $1,450 to $1,870, providing for what Debtors asserted would be full payment of all unsecured claims.  (Docket No. 32).  Debtors' fourth amended schedule J, filed March 6, 2006, shows expenses of $6,469, comprised of reductions from $100 to $75 in home maintenance expense, $600 to $500 for food, $150 to $100 for clothing, $750 to $725 for transportation, $130 to $75 for recreation, and $100 to $80 for haircuts.  (Docket No. 35).  Debtors' fourth amended plan increased the monthly plan payment to $2,150.  The entirety of the increase appears dedicated to the secured claim of Safe America Federal Credit Union.  (Docket No. 34).  Debtors' fifth

amended schedule J, filed March 15, 2006, shows expenses of $6,234, comprised of reductions from $75 to $35 for home maintenance, $500 to $400 for food, $100 to $40 for clothing, and $75 to $40 for recreation.  (Docket No. 37).  Debtors' fifth amended plan increased the monthly payment to $2,385, with the remainder devoted to unsecured claims.  (Docket No. 36).  The fifth amended plan was confirmed.  (Docket No. 45).

      Delia Diaz testified that she was unaware of, or did not understand, the changes to Debtors' schedule J and plan.  She testified that her communications with Baker's office were solely with paralegals and secretaries.

      Baker testified that changes were made in the third amendment was made to provide for payment of unsecured claims in full, at the Trustee's request.  He testified that the fourth amendment was filed due to a change in the amount of Safe America Federal Credit Union's claim.  He testified that the fifth amendment was filed because an additional creditor filed a late proof of claim.

      The claims register in the instant case reflects that Safe America Federal Credit Union filed its proof of claim, in the amount ultimately provided for in the third amended plan, on May 1, 2005, nearly six months prior to Debtors' <u>first</u> amendment.

      Delia Diaz' paychecks show that her base income for 2005 was $6,187 per month.  Her gross income for January through

August, 2005, including overtime and shift differential pay, is consistent with the $7,304.87 amount shown in the third through fifth amended schedule I.  (Trustee's Exhibit 5).

With respect to expenses, Delia Diaz testified that Debtors have not made regular charitable contributions.  She testified that Debtors may have made contributions of $800 in some months, two or three years prior to the filing of the petition in the instant case.  John Diaz testified that he is unaware of why the expenses for transportation and food varied greatly.

The Trustee testified that the instant case appears to be a routine Chapter 13 case.  There were no controversies with creditors, and no claim objections.  No creditors appeared for the meeting of creditors.

The court finds the testimony of Delia Diaz and John Diaz to be credible with respect to the course of dealings between Debtors and Baker.  The court finds Baker's testimony not credible as to the scope of advice provided by Baker and his staff.

## Conclusions of Law

Section 330(a)(4)(B) of the Bankruptcy Code provides that, in a Chapter 13 case, "the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case

11

based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth" in Section 330.  11 U.S.C. § 330(a)(4)(B).

Section 330(a)(3) of the Bankruptcy Code compels the consideration of all relevant factors, including the time spent on such services, the rates charged for such services, whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of the case, whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed, and whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than bankruptcy cases. 11 U.S.C. § 330(a)(3).

Counsel for a debtor in a Chapter 13 case has a duty to supervise the debtor's conduct for compliance with the Bankruptcy Code, and must instruct the debtor on appropriate conduct.  <u>In re Nilges</u>, 301 B.R. 321 (Bankr. N.D. Iowa. 2003).

Bankruptcy Rule 9011(a), by its own terms, excludes schedules from those papers which counsel must sign and represent to the court counsel's belief after reasonable inquiry that they are not filed for an improper purpose.  However, the court retains the inherent power and responsibility to regulate the

12

conduct of counsel appearing before the court.  See Chambers v. NASCO, Inc., 501 U.S. 32, 111 S. Ct. 2123, 115 L.Ed.2d 27 (1991). This inherent power extends to the sanctioning of counsel for knowingly filing false schedules.  In re Thomas, 337 B.R. 879 (Bankr. S.D. Tex. 2006).

However, what is before the court is not a motion seeking sanctions, or the court's order to show cause, but rather a fee application.  As such, the court will limit its instant determination to the instant fee application, without prejudice to the filing of a separate motion for sanctions, or entry of a separate order to show cause.

In the instant case, Baker presented false schedules to the court, without adequately counseling his clients as to what the schedules represented, and without conducting any investigation into their veracity.  It appears that the schedules contain figures invented by Baker or his subordinates, and filed for the improper purpose of evasion of Debtor's obligations to pay creditors.  These services violated counsel's duty to instruct and supervise the Debtors, and violated Baker's ethical duty of candor to the tribunal.  The services rendered by Baker and his subordinates were of zero value, no matter how much time was spent on such services, and irrespective of the ultimate confirmation of the plan in the instant case.  In addition, Baker has imposed considerable burdens of time and detailed attention

on his clients, the Trustee, and the court system, through his inadequate client counseling, filing of false documents, and lax supervision of staff.

Canon 3(B)(3) of the Code of Conduct for United States Judge provides that "A judge should initiate appropriate action when the judge becomes aware of reliable evidence indicating the likelihood of unprofessional conduct by a judge or lawyer." Therefore, the court will forward a copy of this Memorandum Opinion to the Chief District Judge of this district and to the State Bar of Texas for appropriate consideration.

Based on the foregoing, a separate Judgment will be entered denying the "1st Chapter 13 Fee Application" (Docket No. 47) filed by Reese W. Baker.

Signed at Houston, Texas on August 28, 2006.

_____
LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE